Good morning, Your Honors. May it please the Court, California Deputy Attorney General William Shin, on behalf of the appellant-slash-respondent. I'd like to first begin with our Teague argument. Under Teague v. Lane, a rule is considered new unless, after the Court surveys the legal landscape as it then existed, it determines that existing precedent compelled a finding that the rule at issue was required by the Constitution. In this case, a survey of the existing relevant case law as it then existed, that's prior to Cunningham's decision, shows that reasonable jurists would not have felt compelled to conclude that petitioners Well, how is the California scheme different in any meaningful sense from the Blakely scheme, the Washington scheme and Blakely? Well, the rule announced in Cunningham is different and it's contrasted from the one announced in Blakely as well as in Booker because the rule announced in Cunningham is imposition of the upper term within, not above, an initial prescribed sentencing range based on a fact not found by a jury can violate the right to a jury trial, even where the trial court has broad discretion that is reviewed under reasonableness standards. But I asked a specific question. How is it different from the scheme in Blakely? The scheme in Blakely, the Washington sentencing scheme, had a specific initial sentencing range. Well, this does too. It has a minimum range. In order to have something different, you have to find a fact. That's what the Supreme Court said, essentially. But once the additional fact finding by the judge is made, then the sentencing range is taken out of the initial range and it goes beyond. Isn't that the same thing that happened in Washington? I'm talking about the Washington sentencing scheme. All right. And what's the difference here? Well, the difference here is that we have a sentencing scheme where we have the low midterm as well as the upper term. That's the initial range that we're talking about. But obviously the Supreme Court didn't view it that way and it seems a little odd to view it that way in light of Blakely. Well, that's the Cunningham decision. And we're saying that because that's different from the previous decisions. I understand that. But you're saying it's different, but you haven't explained why it's different. And the standard under Teague is that we have to examine the existing law prior to Cunningham. And when we look at the Blakely, Booker and Appendix Cases. I want to look at Blakely in particular because that's the closest in. Okay. Our point is that when we survey the law as it then existed prior to Cunningham, we have many jurists, reasonable jurists, differing as to the result. And that they would and that they did in fact come out with a different decision as the majority in Cunningham. First example we cite to is the fact that this Court previously have ruled that all three cases in Appendix Blakely and Booker had announced new rules within the meaning of Teague. As in, even though they had some facial similarity. And based on the same facial similarity, even though Cunningham contains the same facial similarities, it deals with the factors, judicial factors that increases the sentence beyond what is approved, based on the facts found by the jury. Counsel, I have a question about what may be an overly simplistic way out of this conundrum. And I'd like actually both counsel to comment on it. The entire Appendix Blakely, well, all of that line of cases allows not only a fact found by a jury, but also a fact admitted to by a defendant. Because that presumably waives the right to contest it before a jury. In this case, at the sentencing hearing, when the defense counsel was asked about whether he was on probation status, and the defense counsel, as I understood his argument was, I'd like you to strike that because he didn't have any other probation violations except for this one. He didn't say he wasn't on probation. He didn't say there's a question about whether he was on probation. He seemed to concede that he was on probation, but since he'd been otherwise good, gee, why not strike it? I may be misremembering, or I may have misread it, but if I'm correct, why do we need to have this discussion at all? Well, that's because Teague is a threshold question. And once the claim itself is Teague-barred, we don't even get to the question of whether there was a reasonable application of Supreme Court precedent. So our argument- We can't assume it. It's like jurisdiction where we can't assume it and get to an easier question down the road. That may be the right answer. I agree with Your Honor, and your citation of the record appears to be correct. But our position is because this is a threshold question, we must first answer the difficult question of whether Cunningham, a petitioner's claim based on Cunningham, will be Teague-barred because he announces a new rule. And you're saying it's not within our authority to assume that and go to the next question. Well, once the threshold question of Teague is answered, and if in fact this Court finds that Teague does not bar the application of Cunningham in petitioner's claim, then we get to move on to the next questions. And we have arguments regarding exhaustion. Are you saying that this is a requirement for our decision-making or it's just a better idea? I'm pushing you because in jurisdiction we are not supposed to assume it. We're supposed to decide it, even if it's hard. Right. Is that also true on a Teague bar? Well, I believe the law is that the Teague question is a threshold question, and one-step question is answered. Surely we can skip it if we wanted to. It may not be wise, but because it may be an issue that's going to have to be decided down the road anyway, and then it's going to influence pending cases, and maybe we ought to decide it. But it's not a jurisdictional question. It's a threshold question in the sense that it's logically prior, but we skip logically prior questions all the time. If the Court is inclined to skip over the question, not address the Teague issue, then I would address briefly what Judge Graber just stated regarding the fact, the fact that petitioner had practically admitted that he had a prior conviction. Well, there's a prior question, logically prior question there, too, which I'd like to hear what you have to say to, which is, is the issue of probation within the Al-Mandaris Torah's exception, so that we don't have to worry about whether he admitted it? The fact that probation, yes. The fact that status, that he's on probation at any given moment, as opposed to whether he was placed on probation as part of his sentence. The first almost surely is within the Al-Mandaris Torah's exception, but as to whether at the moment he committed the crime, he was on probation. Is that something that would have to ordinarily be proven to a jury? Well, under Al-Mandaris Torah's case as well as we have cited to a litany of cases in our brief. Well, I know that, but I wanted you to tell me why they're right, because frankly they don't seem right to me. Because the Al-Mandaris Torah's case, the policy behind the case was the factor of recidivism, and the fact that Petitioner was on probation at the time that he committed. But isn't there going to be an enormous controversy about whether somebody is on probation at a particular time? I mean, probation could be modified. He could have been revoked. He could be back in jail. He could have had his probation, even though he was sentenced to three years probation, he could have gone back and gotten modified to one year probation. How are we going to ever prove whether at some particular time he was actually on probation? Well, in this case, we don't have to worry about that because I understand that, but I was asking you to address the theoretical question first. Well, if I understand the question correctly, our position will be that because Al-Mandaris Torah's case talked about the recidivism factor That's not a recidivism factor. It's a status factor. It's a status at X time Y. Well, the fact that a person is on probation is directly related The fact that he was sentenced to probation is one thing. The fact that he's on probation doesn't seem to me to be a recidivism issue. Well, I would disagree with that characterization. If a person is under probation or has been sentenced to a probation, that's directly related to the fact that the underlying case where he was convicted and sentenced to a probation. Therefore, I believe that's the analysis that leads to the recidivism factor. The fact that he had already been convicted for a prior crime in this case was a misdemeanor. And the fact that he was sentenced to probation, yes, but the fact that he was on probation at that moment seems to me to be something which is not going to be proven by the records of the conviction, which is highly disputable and which is exactly the kind of thing that ought to go to a jury, no? Under the new law. I believe the cases that we cited from other circuits as well as from other... All right, let's go on to the next question. What in the record demonstrates that he was in fact on probation? On the record, well, Judge Graber stated that a petition that showed up during the probation here, I'm sorry, during the sentencing hearing, there was absolutely no dispute as to a petitioner's probation status. What was the evidence that he was on probation? Well, I believe the record states that the prosecution has submitted the probation officer's report. And during the discussion regarding... The probation officer, meaning the probation officer in this case, right? Right. And the court says that I've read the... Is the probation officer's report in the record? I believe we submitted the record because of privacy issues. We submit the record to the district court without the actual copy of the probation report because it contains victim's information. So then the court says, on 154 of the record, I've read and considered the probation report in this case, which I've signed. I may not have everything here. Does it somewhere else say, and it says that he was on probation at the time? Well, there is the entire discussion between the court... At 158, I think, he says he was on probation at the time, and that's where his lawyer says this is the only time. I'm paraphrasing, and again, it's hard to keep all this in one's head, so I may be wrong. But I think it's right around SER 158 or thereabouts. My recollection of the record is that there was a specific discussion during the sentencing hearing when the court was talking about the mediating and the aggravating factors. The counsel, as well as the court, as well as the prosecution, specifically discussed the fact that Petitioner was on probation at the time that he committed this crime. The court cited that factor as the aggravating factor, and there was a short discussion that Judge Craver talked about where the Petitioner's trial counsel had requested the court not to consider the fact of prior probation as an aggravating factor because he thought that it was a misdemeanor traffic-related matter that should not be considered as an aggravating factor. But he never contested that he was on probation. Never contested it, and the fact that Petitioner's counsel specifically brought up, and he never mentioned anything about, we refute the fact or we object to the admission of the fact that my client is under probation at the time of the crime. There was no such discussion. So by the representations made or lack of representation or lack of objections made by the trial counsel, that proves that it is indeed an admission. It has the same force and effect as an admission because he never disputed the fact that he was on probation at the time of the crime. Do you want to save your last minute and a half for rebuttal? Yes, I would. Thank you. May it please the Court. Davita Chen for Frank Butler. I would differ with the Court as to what are the easy questions and what are the hard questions in this case. I actually think that the three first questions that are raised, the T question, the exhaustion question, and the 2254-D1 are the easy questions because just comparing California determinate sentencing law to Washington's Sentencing Reform Act leads to the conclusion that Cunningham was dictated by Blakely. But let's skip over what I think are the easy questions and proceed to what I think are the hard questions of this case, which is under France v. Haney, we now have to decide whether the sentence imposed was in fact unconstitutional in this case. And I think that in order for respondents to prevail, this Court must find two things. One, that the single factor exception that was announced in Black 2 is in fact the way that California's law must be interpreted. How can we dispute that when we've been told by the California Supreme Court that that's how it's interpreted? Yes, but even in Mulaney v. Wilbur, which is the case that respondents cite for the proposition that we must accept California Supreme Court's interpretation of California law, there are two exceptions. One is when there's a radical departure from the way that the law was previously interpreted. And two, when the California court or the state court's interpretation of the law appears to be a subterfuge to evade federal review. Is that really inconsistent with the earlier cases? I thought it wasn't actually. I mean, they never were all that clear about it because it didn't have to be. But it's certainly not inconsistent with the earlier cases. Well, I looked at the case that the California Supreme Court cited, which was Osvend. And then I looked at the case Osvend cited, which was Castellano. And I looked at the case Castellano cited, which was Bernie, I think. And I looked at the case Bernie cited, which was Covino. And in all of those cases, the question of whether there's a single aggravating fact is the first question. It's a necessary but not sufficient condition to imposing the upper term. They first look, was there a single aggravating fact? And then they reach the next question, was it enough? Which is actually consistent with the plain language of the statute. That's sort of not different than, essentially, whether there was a single aggravating factor is sufficient to raise the maximum term. And the rest of it is really the exercise of discretion within the maximum term. That's what I understand California now to be saying. And it seems consistent with the system. You say California now to be stating. And I do think that it's actually a change in the law. And I think the best example as to why we can see that it's a change in the law is a case that the magistrate judge actually cited, which is People v. Banks. It was a published decision in which, I think it cited at Yale. It was a change in the law. So what? Well, under Mulaney v. Welber, when the court changes a law in a way that couldn't be predicted and does it in a way that appears to be a subterfuge to evade federal review, we do not accept the state court's interpretation. We at least accept it prospectively, right? Your problem is that it's being applied retroactively. Exactly, Your Honor. And so in that case that the magistrate judge cites, People v. Banks, it came up before Black v. 2. And in it, the trial court had imposed the upper term based on a variety of factors, one of which was the facts of the prior conviction. In that case, People v. I better be clear that it's Banks because I read so many cases this weekend. In that case, People v. Yes, Banks. The California Court of Appeal actually cited Osbon for that same proposition, that a single factor would be enough. And they noted that one of the factors in this case was the, quote, recidivist factor. And yet they still sent the case back to determine whether the trial court could have and would have imposed the upper term. After Black v. 2 was decided, the California Supreme Court reversed and remanded Banks. And what the Court of Appeal did on the remand. But that's not our question. Our question isn't whether it could have and would have imposed the term. The question is whether it was needed to decide a separate fact to impose the upper term. And in other words, our issue at this point isn't really what the court would have done. It's what it could have done. Yes. In that case, what's interesting to me is that the California Supreme Court vacated the decision in Banks after Black v. 2. And the second decision in Banks came out differently. And I think that that is evidence that the California Supreme Court did, in fact, change the law in Black v. 2. When it went up before Black v. 2, it was post-Cunningham. The result was a remand. When it came up the second time, the result was an affirm. Do we have the early citation someplace? Yes. Well, you should give us one of these sheets if you have an early citation. And I think that it's not just all those cases I cited before Osbend and all those and the cases going forward, Banks, but the plain language of 1170B in California Rule 4.420 says that you can only impose the upper term if the aggravating factors outweigh the admitting factors. It doesn't say anywhere that you find one factor, and that makes the defendant eligible for the upper term. And then the court, with the exercises of its discretion, weighs the factors. That's nowhere in the statutory scheme. It's in the statutory scheme now because the California legislature has changed it. It's in the statutory scheme now because Black v. 2 says that it was always there, but there's not a single case that I can find pre-Black v. 2 that has that kind of analysis at all. So I think that the first thing that this court has to decide is to accept Black v. 2 as the law as opposed to a substitute to evade federal review. But even if you don't believe my argument on that, even if you believe that a single factor is enough, you still have to find either that the fact that someone is on probation is a fact which fits within the amontor's exception, or that he admitted that he was on probation. And I submit that neither is borne out. Well, his counsel not only doesn't contest, that would be silence, but his counsel makes affirmative arguments about why, in spite of the fact that his client actually was on probation, it shouldn't be an aggravating factor, or even though he's on probation, it's not a big deal. So the fact of his being on probation seems to me to be admitted. He makes arguments why it shouldn't be counted against him, but it certainly seems that he's admitting it's a true statement. If anyone's admitting it, it's the attorney in this case. Yes, but aren't people bound by their... If the lawyer got up and says, you know, here are the facts that we admit to, and here are the ones that we contest, or here are the facts we admit to, but they don't matter, he's not bound by that? Probably not, because what's going on in Almendar's tour is that somebody, at the change of plea, admitted that he had a prior conviction. This is not something that's like a change of plea. It's not subject to the voluntary knowing intelligent waiver. So he's not bound? If his lawyer had just gotten up and said, yes, this is a vulnerable victim, even though, you know, for whatever reason, and yes, he's on probation, if he'd gotten up and been that clear, you would say that doesn't count? I would say it possibly would go to the harmless error analysis. Yes, that's where it goes. I think the predicate question is not the harmless error analysis. If you want to go to the harmless error analysis, we can go to the harmless error analysis. But except for the one case that I cite in my brief, Zepeda-Martinez, I don't know of a single case that says you look at what an attorney says at sentencing to determine whether a jury could have found a fact, or a defendant would have admitted a fact if he had known that he was subject to... if he was entitled to a jury trial and proof beyond a reasonable doubt. In fact, cases in the... I agree that it's an odd way to proceed, but my understanding is how we are proceeding and how the Supreme Court is proceeding post-Apprendi with regard to things that should have gone to a jury but didn't. In particular, the most recent case with Rescianos, is that it? In Rescianos, the issue was, I believe, whether the person was armed or whether they used a deadly weapon. That evidence clearly came in at trial. But they specifically say, or we have later cases saying, that you can also look at things that came in at sentence. They say that the only case, I believe, that says you can look at what the defendant said at sentencing to remedy the government's failure to prove something, is this case, Zepeda-Martinez. But Zepeda-Martinez, there's two things about it that are very interesting. One, it cites Nordby. Nordby was a case in which there was a trial and it was a case involving the quantity of marijuana, and the defendant at sentencing contested the quantity of marijuana. So this court said in Nordby, well, we can look at what the defendant said and maybe if he had known he had to contest it at trial, or he could have contested it at trial, he would have. It certainly doesn't say, well, the government didn't prove anything about drug quantity at trial, but let's look at what the defendant said at sentencing to remedy the government's failure. Well, but what you're asking us to do is really odd in this sense. We're asked to look at whether any error in having to prove probationary status is harmless. And we have a record in which we know for a fact that he was on probation, and you're asking us to assume that even though the defense counsel admitted it and it was clearly true, the government couldn't possibly have proved beyond a reasonable doubt or that we shouldn't assume that. It's such an easy kind of fact in the sense of it's a status fact. It's not like proving something harder, like whether somebody's a vulnerable victim where there's room for interpretation. He was either on probation or he wasn't, and he admits that he was, or his counsel admits that he was, and you're asking us to say, well, somehow that's not enough. Well, the cases in this circuit seem to indicate that it's not enough. The only case I said that seems to indicate that that would be enough is Zepeda Martinez. And Zepeda Martinez relies on NORDB, which stands for no such proposition. In addition, Zepeda Martinez is a case which arose from a guilty plea. And so in that case, there was no evidence that the government presented at trial. So the only thing anyone had... Isn't it the conceptual problem that something admitted at sentencing, when you think there's a preponderance of the evidence standard applying at sentencing, is not necessarily something that would have been admitted had you known that a beyond a reasonable doubt standard was applied? Absolutely, and that's what this court's cases, I think the case is Minori, since this issue wasn't raised in the briefs, I didn't research this issue. But this court has said, even if you admit something, even in a Rule 11 guilty plea colloquy, if you were not advised that this is a fact that the government needed to prove beyond a reasonable doubt to a jury, that even that admission does not take the fact out of the Apprendi Rule. So to look at what a lawyer may have did say at sentencing, and to say, well, the government is then excused from proving the fact, because at some point later... No, we're not saying excused. We're saying that its failure to have gone through that turns out to be harmless error, because we're confident that they could have proved it. And that's why it seems to me important that this is what I'm referring to as an easy fact to prove, as opposed to the kind of fact that requires some subjective interpretation. I don't believe, though, that except for that one case, Zepeda-Martinez, that there's ever been a case in this circuit or the Supreme Court... Isn't one enough? Except for the fact that Zepeda-Martinez arises in a totally different context. Zepeda-Martinez arises from an appeal of a guilty plea. And so I think it's much better interpreted as a Rule 11 error in that case. And whether the Rule 11 error... In Zepeda-Martinez, where was the admission? Was it at sentencing or at the Rule 11 hearing? In Zepeda-Martinez, the issue was when was the defendant's removal. And it was at sentencing. And it cites Nordby. Regardless of whether it's well decided or ill decided, we're bound by it, right? Yes, but it's distinguishable. It's distinguishable because that... And tell me why it's distinguishable. Because it arises from the guilty plea. And so the government didn't produce any evidence in that case. I don't understand why that would make any difference. Well, I think it makes a difference because in Velasco-Aredia, this court held that the government gets one chance to prove its case. And that chance is at trial or to elicit admissions during a guilty plea. In our case... And Zepeda-Martinez said it wasn't during the guilty plea. It was at sentencing. Yes. So that's the same thing. I mean, there's no sort of logical distinction between a conviction by guilty plea and a conviction by jury trial. And then the question coming up later, can a fact admitted at sentencing inform the question of harmless error? I don't understand the conceptual distinction there. I think that the question of harmless error is, given all the evidence that the government presented to the jury, could the jury have found a different, made a different... Do we have grave doubt that the jury would not have found this fact? How could we have any doubt that the jury... If everybody in the game had known that they had to prove his probationary status to the jury, how can we have any doubt that they would have been able to prove that he was on probationary status at the time? Well, we don't know because the facts really aren't developed. But that is not, I believe, the proper analysis. Isn't the real answer that everybody in the room didn't know that they had to prove to be under reasonable doubt at the time? That's the problem. They did or they didn't? They did not know at the time that it had to be proven to be under reasonable doubt. Therefore, the admission was essentially an admission that, yes, I agree that you could prove by a preponderance of the evidence that this is so, but it wasn't an admission that you could prove beyond a reasonable doubt that it was so. Yes. Because we have no affirmative evidence that it was so. We don't even have the probation report. We don't have the probation report. And even the probation report probably, if I had seen it, which I haven't, indicated that he was placed on probation. But what we have, the question is, was he on probation the date when he was arrested? And his lawyer said, yes, but you shouldn't worry about it as an aggravating factor because of reasons one, two, and three. Right. But the lawyer, neither the lawyer nor the defendant nor the judge nor the prosecutor knew that this was a fact that needed to be proved beyond a reasonable doubt. So an admission, a lawyer's admission, which is even one step removed from the defendant's admission. But it wasn't an admission that they could prove it by any particular quantum of evidence. It was a statement that it was the fact, which is somewhat different. But the law of this circuit is that even if it were admitted during a Rule 11 prequaliquy, where the defendant is told you have the right to remain silent and you have the right to a jury trial and all these different things, even if you admit it in that context, it's not an admission because you were not advised that you had the right to have a jury decide that. We understand your position and you're well over your time, but I think we have a really good idea of your issues. Thank you. Thank you. Your Honor, I would like to briefly address the main point that the Court is focusing on, which is, I believe, the harmless error analysis. Well, the controlling authority in California is Black 2, and Black 2 cited to Osbent. I'm sorry? The controlling authority in California is Black 2, which cites to People v. Osbent, which stated one factor is sufficient in California to make a defendant eligible for the upper term. Based on that rule, here we have the petitioner admitting, well, admitting through his attorney that he was on probation and that qualified. And it's our position that the fact of probation qualifies under the Almondares-Torres He keeps saying your position, but you don't give any reasons. Well, the reasons are cited on the cases that we cited to. I know, and you keep citing cases, but you still haven't given me your reason why it would not be a highly disputable fact in many instances as to whether somebody was on probation, quite different from whether something that couldn't be determined by what he was convicted of or what he was sentenced to. Well, and I explained this before. The fact that the fact of probation is directly related to his previous, he cannot be sentenced to a probation without a conviction. We know he was convicted. The question is whether he was, if he had completed his term of probation and then he committed this crime, there would not be an aggravating factor of being on probation. It's his status at the moment of the crime. That's the issue. And so his status at a present moment isn't necessarily determined by the prior conviction. Do you understand the problem? I believe I do, but I still believe that the fact that petitioner had already been convicted. We have these cases, for example, about border crossing, where you have to cross the border after you've been convicted of a felony, right? And we've held that that is not covered by alimentaris torus because the relationship between those two, yes, the fact that he was convicted is covered by alimentaris torus, but the additional fact that he crossed the border afterwards is not. And here, the fact that he was sentenced to probation is covered by alimentaris torus, but the fact that he remains on probation at a particular moment is not. Based on the interpretations by other courts, I would agree that it is covered under the alimentaris torus exception. But because, assuming that he, based on the fact that he does qualify under the prior conviction exception and his attorney has been given the authority by his client to represent to the court, whatever the representation it is, here what the representation was that he was on probation. He didn't make the representation. By implication, you can say he didn't object, and he did say, well, why don't you strike that? But he didn't affirmatively say it was so. It's a fair inference, perhaps, but he didn't say it. Well, he didn't directly say it, but the indirect inference is the fact that he is admitting that he was on probation. He would not ask the court to strike a probation finding if he doesn't believe that his client has one. He would have said, my client was not on probation at the time that he committed the crime. Instead, he said, would you please just not consider the fact because it was based on a misdemeanor conviction. Counsel, your time has expired, and we appreciate your arguments. I think we understand both sides' positions, and we appreciate your vigorous and helpful arguments. Thank you. And the case just argued is submitted, and we will stand adjourned for this session.
judges: Hall, Graber, Berzon